UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

TRAVELERS INDEMNITY COMPANY,

          Plaintiff,

    -against-

VALLEY PSYCHOLOGICAL, P.C., LMK
PSYCHOLOGICAL SERVICES, P.C.,
JONATHAN KOGEN, PH.D., ANDREW
BLUMENTHAL, MARIA VASQUEZ, LAUREN
LESSER, LENNOX ANTHONY CALDER, JAMES
EDWARD MAXWELL, STEPHANIE GARMAN,
KRISTEN DOROTHY EHERNS, LYNNE B. ROSEN,
CHERYL LYNNE JONES, also known as Cheryl Lynne
Moultrie, WENDY IRIS LEVINE, ORNA LEPAPE,
TAHIR MEDICAL, P.C., LENOX WELCARE
MEDICAL, P.C., ST. JOHN MEDICAL, P.C.,
BUSHWICK PLAZA MEDICAL, P.C.,
COLIN CLARKE M.D, P.C., CORONA PARK
MEDICAL CARE, P.C., NEWBURGH MEDICAL, P.C.,
RRD MEDICAL, P.C.,

          Defendants.

ORNA LEPAPE,

          Cross-Claimant,

    -against-

VALLEY PSYCHOLOGICAL, P.C., LMK
PSYCHOLOGICAL SERVICES, P.C.,
JONATHAN KOGEN, PH.D., ANDREW
BLUMENTHAL, MARIA VASQUEZ, LAUREN
LESSER, LENNOX ANTHONY CALDER, JAMES
EDWARD MAXWELL, STEPHANIE GARMAN,
KRISTEN DOROTHY EHERNS, LYNNE B. ROSEN,
CHERYL LYNNE JONES, also known as Cheryl Lynne
Moultrie, WENDY IRIS LEVINE, TAHIR MEDICAL,
P.C., LENOX WELCARE MEDICAL, P.C., ST. JOHN
MEDICAL, P.C., BUSHWICK PLAZA MEDICAL, P.C.,
COLIN CLARKE M.D, P.C., CORONA PARK
MEDICAL CARE, P.C., NEWBURGH MEDICAL, P.C.,
RRD MEDICAL, P.C.,

          Cross-Defendants.

-----------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**11-CV-2834 (NGG) (RER)**

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.

★ AUG 2 1 2012 ★

BROOKLYN OFFICE

NICHOLAS G. GARAUFIS, United States District Judge.

Pending before the court is an omnibus motion by Valley Psychological, P.C., LMK Psychological Services, P.C., Jonathan Kogen, Andrew Blumenthal, Maria Vasquez, Lauren Lesser, Lennox Colder, James Maxwell, Stephanie Garman, Kristen Ehrens, Lynne Rosen, and Cheryl Jones (collectively "Moving Defendants"). The Moving Defendants seek to have this case dismissed for lack of subject matter jurisdiction. Apparently in the alternative, they also request that the court dismiss it for failure to state a claim, or, barring that, enter summary judgment in their favor. Finally, should these aspects of their motion be denied, the Moving Defendants move to strike certain language from the Complaint. The motion is DENIED in its entirety.

There is no need at this time to delve extensively into the details of the Complaint. For the purposes of deciding the Moving Defendants' motion it is sufficient to note that the plaintiff, Travelers' Indemnity Company, alleges that it is the victim of an elaborate insurance fraud involving all of the Moving Defendants; and that it asserts claims against all or some of the Moving Defendants for common law fraud, aiding and abetting fraud, and unjust enrichment. (See Compl. (Docket Entry # 1) ¶¶ 1-2 and 82-99.) Travelers seeks over $150,000 in damages for benefits paid on allegedly fraudulent no-fault insurance claims as well as a declaratory judgment that an undisclosed amount of additional, pending, insurance claims are fraudulent. (See id. ¶¶ 1 and 3.) The court is alleged to have jurisdiction over the case on the basis of diversity of citizenship. (See id. ¶ 31.)

At a pre-motion conference held August 16, 2011, the court granted the parties leave to engage in limited discovery related solely to the court's subject matter jurisdiction (see Minute Entry of Aug. 16, 2011); the parties engaged in such discovery, and this motion followed.

The Moving Defendants' principal contention is that the amount in controversy is

$75,000 or less, thereby depriving the court of subject matter jurisdiction. (See Defs.' Mem. of Law in Supp. of Mot. to Dismiss (Docket Entry # 59-21) at 13-23.) They are mistaken.

Federal district courts have original jurisdiction over suits between parties of diverse citizenship if "the matter in controversy exceeds $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Where the party invoking the court's jurisdiction pleads for damages in excess of $75,000, there is "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Scherer v. Equitable Life Assurance Soc'y of the U.S., 347 F.3d 394, 397 (2d Cir. 2003) (quoting Worlde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)). This presumption is overcome only upon a showing, "to a legal certainty," that the amount in controversy falls short of the statutory minimum. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938). Courts must restrict their inquiry about the amount in controversy to the face of the complaint at the time of its filing. Neither subsequent events nor the existence of a valid affirmative defense can factor into a court's analysis. See Scherer, 347 F.3d at 397

It is easy to see why the latter should be the case. "Were [affirmative] defenses to affect the jurisdictional amount . . ., 'doubts and ambiguity would surround the jurisdictional base of most diversity litigation from complaint to final judgment, and issues going to a federal court's power to decide would be hopelessly confused with the merits themselves.'" Id. (alterations omitted) (quoting Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982)).

Such "hopeless confusion" would ensue here if the court took into consideration the majority of the Moving Defendants' amount-in-controversy arguments. For the most part these arguments are nothing more than affirmative defenses masquerading as jurisdictional arguments. The Moving Defendants argue statute of limitations, release, potential res judicata, and various

alleged state-law-specific defenses. (See Defs.' Mem. of Law. in Supp. of Omnibus Mot. (Docket Entry # 50-1) at 17.) Assuming all or some of these arguments were valid defenses to Travelers' claims, they are just that—defenses. Their validity requires an analysis of the action's merits that is premature. There has been no merits discovery in this case. Travelers did not received notice in the form of a pleading that the Moving Defendants intended to raise these defenses. It would be wholly inappropriate for the court to reach these arguments at this preliminary stage of the proceedings.

Once the Moving Defendants' affirmative defenses are put to the side, there is no question that the amount in controversy in this case far exceeds the statutory minimum.

Travelers alleges a six-year fraud pursuant to which some of the Moving Defendants "routinely" submitted falsified and misleading insurance claims for payment. (See, e.g., Compl. ¶¶ 4 and 70.) According to the Complaint, Travelers paid in excess of $150,000 to satisfy these claims, and that some undisclosed amount of similar claims remain pending. (See, e.g., id. ¶¶ 81 and 85.)

As explained above, it is the Moving Defendants that have the burden of showing "to a legal certainty" that these allegations are not good faith representations of the amount in controversy.

They have not met this burden. Even with the benefit of jurisdictional discovery, the Moving Defendants offer no evidence that tends to show that the amount in controversy is less than the statutory minimum. Rather, it is Travelers that has supported its allegations by providing two spreadsheets documenting the specific insurance claims at issue in this litigation. The first spreadsheet, referred to by Travelers as the "Revised Damages List", contains an itemized list of insurance claims paid by Travelers to certain Moving Defendants. (See Haws

Decl. (Docket Entry # 51) ¶¶ 19-20 and Ex. A to Ex. E. to Haws Decl. (Docket Entry # 51-6) at 4.) These claims sum to $154,799.95. (Id.) The second spreadsheet—the "Revised Declaratory Judgment List"—contains an itemized list of insurance claims submitted to Travelers by the Moving Defendants on which Travelers has not to paid. (See Haws Decl. ¶¶ 19-20 and Ex. B to Ex. E. to Haws Decl. at 9.) These claims sum to $249,870.18 (id.), and bring the total amount in controversy to $404,6701.13. To further buttress the Complaint's allegations, Travelers has also submitted the cancelled check that corresponds to each of the claims except one in the Revised Damages List. (See Haws Decl. ¶ 22; Ex. F. to Haws Decl. (Docket Entry # 51-7).) Review of these checks shows that the checks were indeed drawn from various Travelers' bank accounts and made payable to the Moving Defendants. The Moving Defendants offer no evidence to indicate that these checks are forgeries or pertain to some business relationship not implicated by the Complaint. In the face of direct documentary evidence that Travelers has paid at least $150,000 to the Moving Defendants between 2000 and 2011, the Moving Defendants cannot show to a legal certainty that the amount in controversy is $75,000 or less. The court therefore need not expound on the Moving Defendants' non-affirmative-defense arguments, which are either flatly contradicted by Travelers' evidence or, even if accepted, would not reduce the amount in controversy to any number close to the statutory minimum.[1]

The part of the Moving Defendants' motion that seeks to dismiss the Complaint for lack of subject matter jurisdiction is DENIED.

The Moving Defendants also move to sever Travelers' claims into an undisclosed

---

[1]     The Moving Defendants also offer as an alternative rational for dismissing the Complaint on jurisdictional grounds the theory that Travelers claims should be severed into a multitude of smaller claims, each for $75,000 or less. As discussed below, the court denies the Moving Defendants' motion to sever, and so it need not determine whether the Moving Defendants' severance theory can be reconciled with the rule that events subsequent to the filing of a complaint cannot oust jurisdiction.

quantity of lesser claims. They note that, based on Travelers' two spreadsheets, payment on some 987 insurance claims is in controversy, and that these claims pertain to 320 patients. (See Defs.' Mem. of Law. in Supp. of Omnibus Mot. at 14.) The Moving Defendants contend that a determination of liability will require a "claim-by-claim" analysis of each of these insurance claims. (Id.)

The Moving Defendants misread the Complaint. Travelers has not alleged 987 mini-frauds; it has instead alleged a single, ongoing, conspiracy to defraud it of hundreds of thousands of dollars of insurance benefits. (See Compl. ¶¶ 1-2.) The Complaint alleges that the Moving Defendants created and employed medical processing and treatment protocols designed solely to defraud Travelers and other no-fault insurers. (See id. ¶ 2.) At issue is not one particular insurance claim or another, but rather the whole of the Moving Defendants' business model. (See id.) There is nothing claim- or patient-specific about the allegations contained in the Complaint. Each of the insurance claims submitted by the Moving Defendants is alleged to be tainted by the same fraudulent acts.

In any event, even if the court were to read the Complaint as raising hundreds of aggregated claims, there would still be no cause for severance.

"A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). The decision to sever claims is left to the sound discretion of the district court, see New York v. Henrickson Bros., Inc., 840 F.2d 1065, 1082 (2d Cir. 1988), and is made against the backdrop of a strong policy preference in favor of the aggregation of claims, cf. United Mine Workers v. Gibbs, 383 U.S. 715, 724 (1966) (stating that under the Federal Rules, "joinder of claims, parties and remedies is strongly encouraged"). When considering motions to sever or for separate trials, courts in this circuit

6

often consider five factors first articulated in Morris v. Northrop Grumman Corp., 37 F. Supp. 2d 556, 580 (E.D.N.Y. 1999). See, e.g, Kent v. Drought, No. 08-CV-414 (JTC), 2010 U.S. Dist. LEXIS 115506, at *22-23 (W.D.N.Y. Oct. 29, 2010); Todaro v. Siegel Fenchel & Peddy, P.C., No. 04-CV-2939 (JS) (WDW), 2008 U.S. Dist. LEXIS 17894, at *5 (E.D.N.Y. Mar. 3, 2008); Corporan v. City of Binghamton, No. 05-CV-1340, 2006 U.S. Dist. LEXIS 74963, at *9 (N.D.N.Y. Oct. 16, 2006); Cox v. Bland, No. 00-CV-311 (CFD), 2002 U.S. Dist. LEXIS 7309, at *16 (D. Conn. Mar. 27, 2002); Wausau Bus. Ins. Co. v. Turner Constr. Co., 204 F.R.D. 248, 250 (S.D.N.Y. 2001). These factors are:

> (1) whether the claims arise out of same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated [by severance]; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims.

Morris, 37 F. Supp. 2d at 580.

None of the five factors would point toward severance in this case. As already discussed, all of the individual insurance claims at issue in this case are alleged to be the product of a single conspiracy to defraud and therefore arise out of the same occurrence and present common issues of law and fact. Settlement and judicial economy would most certainly not be facilitated by the severance of this case into some thousand smaller cases. (See Pl.'s Mem of Law in Opp'n to Omnibus Mot. (Docket Entry # 54-17) at 14.) Travelers would be obviously prejudiced if forced to litigate each of the insurance claims separately; such an approach would require it to pay numerous filing fees and to present the same evidence and argument over and over again. Finally, for the same reason that specific claims would arise out of a common set of facts and implicate the same principles of law, the same witnesses and documentary proof would be

needed to make a prima facie case on each claim.[2]

As Travelers correctly points out, the Complaint does not set out a novel theory of liability. (See Pl.'s Mem of Law in Opp. to Omnibus Mot. at 15 n.5.) Medical providers have been sued before in this district for systematically defrauding insurance companies, see, e.g., Compl., State Farm Mut. Auto. Ins. Co. v. Liguori, No. 08-CV-967 (JFB) (WDW) (E.D.N.Y. Mar. 7, 2008), Docket No. 1; Am. Compl., State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., No. 04-CV-5045 (ILG) (E.D.N.Y. Oct. 22, 2007), Docket No. 239; Am. Compl., State Farm Mut. Auto. Ins. Co. v. Grafman, No. 04-CV-2609 (NG) (SMG), (E.D.N.Y. June 4, 2007), Docket No. 241; Compl., State Farm Mut. Auto Ins. Co. v. Kalika, No. 04-CV-4631 (CBA) (CLP), (E.D.N.Y. Oct. 27, 2004), Docket No. 1, and these suits have typically involved hundreds or thousands of individual insurance claims, see, e.g., Liguori, 589 F. Supp. 2d at 224 (E.D.N.Y. 2008) ("State Farm seeks to recover more than $1 million that it alleges was wrongfully obtained by the defendants' medical practice from State Farm through a massive fraudulent billing scheme involving the submission of hundreds of bills . . . ."); Kalika, 2006 U.S. Dist. LEXIS 97454, at *3-4 (E.D.N.Y. Mar. 16, 2006) ("The Complaint alleges that . . . defendants engaged in a fraudulent scheme to defraud State Farm by submitting 'thousands' of fraudulent charges . . . .").

---

[2]    While the Moving Defendants might—at the appropriate time—raise affirmative defenses limited to various subsets of the insurance claims, their moving papers indicate that these subsets will be fairly large. (See Meyerson Decl. (Docket Entry # 50-2) at 5 and Ex. Q to Meyerson Decl. (Docket Entry # 50-12) (listing roughly 98 insurance claims that the Moving Defendants may argue are barred by statute of limitations); Ex. U to Meyerson Decl. (Docket Entry # 50-12) (listing roughly 176 insurance claims that the Moving Defendants may eventually argue are barred by res judicata); Ex. W to Meyerson Decl. (Docket Entry # 50-12) (listing roughly 15 insurance claims that the Moving Defendants may argue are barred by an alleged state affirmative defense); Ex. Y to Meyerson Decl. (Docket Entry # 50-12) (listing roughly 329 insurance claims that the Moving Defendants may argue are barred by an alleged state affirmative defense).)  This means that the number of different witnesses and types of prove needed to defend the claims would be minimal.  Given the large amount of testimony and evidence that would be common to all of the claims, these differences could not by themselves justify severance.

There is no indication that any of the claims in these actions were deconstructed and severed, and there is no good reason take such an approach here.

The part of the Moving Defendants' motion that seeks to sever Travelers' allegedly aggregated claims is DENIED.

Moving Defendants also request either that the Complaint be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted, or, in the alternative, that summary judgment be entered in their favor.

It is too early in the proceedings for the court to consider a motion for summary judgment. The Moving Defendants were not granted leave to move for summary judgment (see Minute Entry of Aug. 16, 2011), and the court will not convert their Rule 12(b)(6) motion into a motion for summary judgment. It is true that the parties have presented material extraneous to the Complaint, but they produced the majority of this material for the purpose of resolving the Moving Defendants' challenge to the court's subject matter jurisdiction. To the extent that any of this outside-the-pleadings material bears on the merits of the case, that material is incomplete because the parties have yet to even begin merits discovery. The court therefore excludes all outside-the-pleadings material for the purpose of ruling on the Moving Defendants' Rule 12(b)(6) motion, and will confine its review to the face of the Complaint. See Fed. R. Civ. P. 12(d).

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint, not the merit of the plaintiff's claims. Fresh Meadow Food Servs., LLC v. RB 175 Corp., 282 F. App'x. 94, 97 (2d Cir. 2008) (summary order). For this reason the court accepts all well-pled factual allegations as true, Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), and the court will not consider affirmative defenses that do not appear on the face of the Complaint, see Kim v. United

9

States, 632 F.3d 713, 719-20 (D.C. Cir. 2011); cf. Jones v. Block, 549 U.S. 199, 215 (2007) ("A complaint is subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on the its face." (alterations omitted) (quoting Leveto v. Lapina, 258 F.3d 156, 161 (3d Cir. 2001))).

A plurality of the Moving Defendants' arguments run afoul of these basic precepts in that they either ask the court to look beyond the face of the Complaint or attack the veracity of Travelers' well-pled factual allegations. For example, the Moving Defendants argue that the Travelers claim for unjust enrichment must fail because Travelers has "unclean hands." (See Defs.' Mem. of Law. in Supp. of Omnibus Mot. at 23.) But unclean hands is an affirmative defense, see Nassau Trust Co. v. Montrose Concrete Prods. Corp., 56 N.Y.2d 175, 179 (1982); Crawford v. Burkey, 93 N.Y.S.2d 338, 339 (App. Div., 3d Dep't 2012), and there is nothing in the Complaint to indicate its applicability here. Accordingly, the court cannot look beyond the Complaint and consider the argument at this time. Similarly premature is the Moving Defendants' contention that Travelers' common law fraud claim is "futile." (See Defs.' Mem. of Law in Supp. of Omnibus Mot. at 22.) The argument is nothing more than a merits-based denial of liability (see id.), and therefore cannot be raised in support of a Rule 12(b)(6) motion.

Another one of the Moving Defendants' points is insufficiently argued. The Moving Defendants contend that Travelers' common law fraud claim should be dismissed against two of them, Defendants Kogen and Blumenthal, because Travelers' supporting allegations "comprise nothing more than non-actionable civil conspiracy." (Id. at 24.) They do not, however, explain why the bad acts alleged to have been committed by these defendants do not amount to common law fraud or some other actionable tort in New York. Without at least some discussion of the elements of fraud and how they apply to facts as alleged in the Complaint, the court cannot consider this argument.

10

The Moving Defendants do raise one argument that is appropriate for a Rule 12(b)(6) motion. They argue that Travelers' claim for "aiding and abetting" is not a recognized cause of action. (See id. at 24.) According to the Moving Defendants, such a claim "is akin to an allegation of conspiracy," and civil conspiracy is not a free-standing tort in New York.

The Moving Defendants are correct that a claim of civil conspiracy is not actionable in New York. See Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (citing Alexander & Alexander of N.Y., Inc. v. Fritzen, 68 N.Y.2d 968, 969 (1986)). But this would only matter if Travelers had, in fact, asserted a civil conspiracy claim.

It has not. Instead, Travelers has expressly asserted a claim for aiding and abetting fraud. Someone who aids and abets an actual fraud is subject to civil liability under New York law. See CPC Int'l Inc. v. McKesson Corp., 70 N.Y.2d 268, 285-86 (1987); accord Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292 (2d Cir. 2006). The elements of this tort are: "(1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." Lerner, 459 F.3d at 292 (quotation marks and alterations omitted); see also Goldson v. Walker, 885 N.Y.S.2d 133, 134 (App. Div., 2d Dep't 2009) ("[T]he complaint adequately sets forth that [the defendant] had actual knowledge of the fraud and that he provided substantial assistance to the commission of the fraud, which are essential elements of a cause of action to recover damages for aiding and abetting fraud."). The Moving Defendants do not dispute that Travelers has alleged facts that, if proven, would establish these three elements. The claim is therefore cognizable and sufficiently pled.

The part of the Moving Defendants' motion that seeks to dismiss the Complaint for failure to state a claim upon which relief can be granted is DENIED.

This leaves one remaining part of the omnibus motion to be decided—the Moving

11

Defendants' request that certain language from the Complaint be stricken as "immaterial and scandalous." (See Defs.' Mem. of Law in Supp. of Omnibus Mot. at 25.) The Moving Defendants cite the relevant Federal Rule, but do not provide any legal authority that supports their argument. Nor do they offer any putative justification for striking the language except for the conclusory statement that it is used by Travelers "solely to inflame emotion." (See id.) Without meaningful argument and authority, the court will not strike any language from the complaint. Cf. In re Platinum & Palladium Commodities Litig., 828 F. Supp. 2d 588, 593 (S.D.N.Y. 2011) ("A motion to strike 'will be denied, unless it can be shown that no evidence in support of the allegation would be admissible.'" (quoting Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976))).

The part of the Moving Defendants' motion that seeks to strike language from the Complaint is DENIED.

The omnibus motion is DENIED in its entirety. The Moving Defendants are directed to file and serve an answer to the Complaint within 21 days.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
     August 2⁄0, 2012

NICHOLAS G. GARAUFIS
United States District Judge